UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARWIN HALL,

    Plaintiff,

v.                                                       Case No. 04-75050
                                                       Honorable Patrick J. Duggan

ESIS, INC., and
GROUP SICKNESS & ACCIDENT
INSURANCE PLAN,

    Defendants.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 19, 2005.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                          U.S. DISTRICT COURT JUDGE

Plaintiff Darwin Hall ("Plaintiff") filed this lawsuit pursuant to the Employment Retirement Income Security Act ("ERISA"), seeking benefits under a Group Sickness and Accident Insurance Plan. This matter presently is before the Court on Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment. Both motions have been fully briefed by the parties. The Court held a hearing on the parties' motions on August 18, 2005. For the reasons stated below, the Court will grant Defendants' motion and deny Plaintiff's motion.

**I.     BACKGROUND**

Plaintiff, an hourly UAW assembly worker employed by DaimlerChrysler Corporation, filed this lawsuit asserting two claims against Defendants ESIS Inc. ("ESIS") and the Group Sickness & Accident Insurance Plan (the "Plan" or "S&D Plan").[1]  First, Plaintiff claims Defendants breached the terms of the Plan in violation of 29 U.S.C. § 1132(a)(1)(B).  Second, Plaintiff claims Defendants breached their fiduciary duties in violation of 29 U.S.C. § 1132(a)(3).  ESIS is the Third Party Administrator of the Plan for DaimlerChrysler and acts as DaimlerChrysler's agent for purposes of administrating the Plan.  The S&D Plan is one of several benefit plans provided by DaimlerChrysler pursuant to its Life, Disability and Health Care Benefits Program, as set forth in a collective bargaining agreement ("CBA") between DaimlerChrysler and the UAW.

On August 13, 2001, Plaintiff was injured in an non-occupational incident when a vehicle struck him in the driveway of a private residence.  Although there is some dispute as to when Plaintiff filed his first claim for sickness and accident ("S&A") benefits due to this injury, there is no dispute the claim was filed more than 20 days after the accident.[2]  The S&A Plan requires any Notice of Claim to be filed "within 20 days after any period of disability begins, or as soon thereafter as is reasonably possible."  *See* Defs.' Mot. Ex.

---

[1] Plaintiff initially sued ESIS, only.  On May 17, 2005, Plaintiff amended his original complaint to add the Group Sickness & Accident Insurance Plan as a defendant.

[2] Plaintiff points to evidence establishing that the claim was filed on September 7, 2001; Defendants point to evidence indicating the claim only was filed on October 11, 2001.

B at 104.  Finding Plaintiff's claim untimely, ESIS denied the claim on October 21, 2001.  *See id*. Ex. 2 of Claim File.  Plaintiff appealed the decision through his union representative on December 12, 2001.  DaimlerChrysler notified Plaintiff on February 27, 2002, that his appeal was denied following a review by a DaimlerChrysler representative and a union representative.  *See id* Ex. 4 of Claim File.

Plaintiff filed a second claim for S&A benefits on September 11, 2002, for a latent disability arising from the August 13, 2001 accident. The disability date on this second claim was August 21, 2002.  ESIS denied the claim on September 12, 2002, also because of the Plan's "20 day rule."  *See id*. Ex. 6 of Claim File.  Plaintiff appealed this denial on November 5, 2002.  DaimlerChrysler notified Plaintiff on February 17, 2003, that this appeal also had been denied by a DaimlerChrysler representative and union representative.  *See id*. Ex. 8 of Claim File.  Plaintiff thereafter filed this lawsuit.

## II.     **Standard for Summary Judgment**

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof

3

at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## III.   Applicable Law and Analysis

Defendants seek summary judgment with respect to Plaintiff's ERISA claims, arguing that the S&D Plan does not meet the definition of an "employee welfare benefit plan" as defined in ERISA. Plaintiff seeks summary judgment contending the Plan is an ERISA plan and Defendants' decision to deny him benefits was arbitrary and capricious. In response to Defendants' motion, Plaintiff also asks for leave to amend his complaint *if* the Court concludes that his claims must fail because the Plan is not an ERISA plan. In his proposed amended complaint, *see* Plaintiff's Resp. Ex 6, Plaintiff adds claims alleging equitable estoppel (Count III) and tortious interference with business expectancy (Count

IV).³  Alternatively, Plaintiff asks the Court to dismiss his present lawsuit without prejudice so he can file an action in state court alleging a claim of tortious interference with business expectancy.

**A.     Whether the S&D Plan is Covered by ERISA**

ERISA grants a participant the right to bring a cause of action against an administrator of a plan, but only for violating an ERISA plan.  29 U.S.C. § 1132(b). Pursuant to ERISA, the terms "employee welfare benefit plan" and "welfare benefit plan" are defined as:

> . . . any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits . . . .

29 U.S.C. § 1002(1).  The Secretary of Labor has issued regulations in order to clarify these terms.  29 C.F.R. § 2510.3-1(a)(1).  According to those regulations, the term "employee welfare benefit plan" and "welfare benefit plan" exclude certain payroll practices.  *Id*.  As the regulations provide:

> (b) Payroll practices.  For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include–

---

³Although Plaintiff only requests to amend his complaint if the Court holds that the S&D Plan is not an ERISA plan, his proposed amended complaint continues to allege that it is an ERISA plan and retains his two counts alleging ERISA violations.

5

. . .

> (2) Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment) . . .

29 C.F.R. § 2510.3-1(b)(2). Reading these regulations as "expressly declar[ing] that sick leave benefits are excluded from the definition of 'employee welfare benefit plan,'" the Sixth Circuit concluded in *Abella v. W.A. Foote Memorial Hospital, Inc.*, 740 F.2d 4 (1984), that the plaintiff's ERISA action to recover pay for accumulated sick leave should be dismissed.

The rationale for excluding certain payroll practices from those plans covered by ERISA can be found in Congress' purpose in enacting the statute. As the Supreme Court explained in evaluating a plan for vacation benefits:

> In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds . . . To that end, it established extensive reporting, disclosure, and fiduciary requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator. Because ordinary vacation payments are typically fixed, due at known times, and do not depend on contingencies outside the employee's control, they present none of the risks that ERISA is intended to address. If there is a danger of defeated expectations, it is no different from the danger of defeated expectations of wages for services performed– a danger Congress chose not to regulate in ERISA.

6

*Massachusetts v. Morash*, 490 U.S. 107, 115, 109 S. Ct. 1668, 1672 (1989). In other words, participants in a plan funded from the general assets of the employer– as opposed to those funded by a trust– do not face a threat of non-payment of their benefits based on the improper management of the trust; rather the security of their benefits is based on the financial health of the employer. Relying on this rationale, one district court in the Sixth Circuit concluded that short-term disability plan benefits paid from the employer's general assets were a payroll practice excluded from ERISA. *Williams v. Great Dane Trailer.* No. 94-2189-G/A, 1995 WL 447268 (W.D. Tenn 1995)(unpublished op.); *see also Capriccioso v. Henry Ford Health Sys.*, No. 99-1369, 2000 WL 1033030, at *2-3 (6th Cir. 2000)(unpublished op.)(concluding that employer's salary continuation benefits constituted a "payroll practice" excluded from ERISA as "[t]he staff members are relying on the financial health of [the employer], not that of the long-term disability carrier, for payment of [benefits].") In *Capriccioso*, the Sixth Circuit furthered relied on the fact that the employer never maintained records consistent with ERISA's requirements with respect to the plan at issue and had not submitted or filed any documents or forms with the Department of Labor or Internal Revenue Service ("IRS") identifying or representing in any way that the plan constituted an employee welfare benefit plan under ERISA. *Capriccioso*, 2000 WL 1033030, at *3.

The undisputed evidence in this case establishes that DaimlerChrysler pays benefits provided under the S&A Plan from the corporation's general assets. *See* Defs.' Mot. Aff. James Fenton ¶ 2. Defendants further demonstrate that DaimlerChrysler

does not file a Form 5500 with the IRS to identify the Plan as an ERISA plan. *See id.* Defendants show that DaimlerChrysler treats the Plan as a payroll practice, *see id.* ¶ 3, and Plaintiff provides no evidence to show otherwise.

Citing *McMahon v Digital Equipment Corporation*, 998 F. Supp. 62 (D. Mass. 1998), Plaintiff argues that the S&D Plan is covered by ERISA because DaimlerChrysler held it out as an ERISA plan in the CBA and employee "benefits book." Contrary to Plaintiff's assertion, however, neither document represents the Plan as an ERISA plan. Plaintiff cites to language in Article 1, Section 3(C)(1) in Exhibit B to the CBA. This section provides:

> The provisions of this Insurance Program relative to group sickness and accident insurance, group reinstated sickness and accident insurance and group extended disability insurance shall not be applicable to employees who are or become subject to the laws of jurisdictions in which the laws now or hereafter may prescribe benefits, by whatever name called, and which laws are not preempted by the Employee Retirement Income Security Act of 1974, as amended (ERISA), for employees who are disabled by non-occupational sickness or accident, or similar disability. In that event, compliance by the Corporation with such laws shall be without prejudice to its rights and privileges under ERISA and shall be deemed full compliance with the provisions of this Program relative to group sickness and accident insurance, group reinstated sickness and accident insurance and group extended disability insurance with respect to employees in such jurisdictions. . . .

*See* Defs.' Mot. Ex. A at 7-8. This section, entitled "State and Federal Laws," only speaks to DaimlerChrysler's rights and privileges under ERISA relative to employees in jurisdictions with laws that would preempt ERISA. Nowhere in this section is the S&D Plan identified as an ERISA plan.

As to page 143 of the employee benefits book to which Plaintiff refers, this page provides administrator contact information for those plans described in the benefits book. *See* Pl.'s Resp. Ex. 2. However, the fact that there is a claim administrator to contact with respect to the S&A Plan does not demonstrate that it is an ERISA plan. Furthermore, one page earlier, the employee benefits book specifically identifies some of the plans as welfare plans, but the S&D Plan is not included. This section further provides plan sponsor and plan administrator information with respect to those plans, the official plan name and plan number for those plans, and the Employer Identification Number. *See* Defs.' Mot. Ex. B at 142.

Plaintiff also focuses on the following language at the end of the benefits book: "This summary is designed to meet the legal requirements for summary plan descriptions established by the Employee Retirement Income Security Act of 1974 (ERISA) . . ." *See id*. at 143. Clearly this language is included in the benefits book because some of the benefit plans described in the book are ERISA plans (e.g. group life insurance benefits and accidental death and personal loss insurance). This does not necessarily demonstrate that every plan set forth in the book is an ERISA plan. Thus Plaintiff has not pointed to any language in the benefits book or CBA where the S&A Plan is presented as an ERISA plan.

Plaintiff presents no other evidence to support his claim that Defendants or DaimlerChrysler orally, or in writing, represented that S & A benefits are part of an ERISA plan. In comparison, in *McMahon* the court determined that the short-term

9

disability benefits paid out of the general assets of the employer were not a payroll practice but an employee welfare benefit plan covered by ERISA because (1) the plan was funded in part by an insurance contract and trust fund and was secured by a fidelity bond, (2) the employer treated the plan as one covered by ERISA, and (3) the employer assured employees they were entitled to ERISA's protections. 998 F. Supp. at 67. With respect to the employer's treatment of the plan as an ERISA plan, the evidence established that the employer represented to the Department of Labor and IRS that the plan was an ERISA-covered plan by submitting the necessary forms to those agencies. *Id*. Additionally, the employer provided employees its employer identification number and the plan number used in the Department of Labor filings. *Id*.

Plaintiff has not presented any evidence to suggest that DaimlerChrysler supplements its funding for the S&A Plan with insurance, a trust, or a security bond. There is no evidence that DaimlerChrysler presents the Plan as an ERISA plan or assures employees that they are entitled to ERISA's protections with respect to the Plan. The evidence presented also does not suggest that DaimlerChrysler represents the Plan to the IRS as an ERISA covered plan.

In conclusion, the Secretary of Labor's regulations specifically exclude from the definition of "employee welfare benefit plan," benefits paid out of an employer's assets on account of periods of time during which an employee is physically unable to work. 29 C.F.R. § 2510.3-1. Defendants present evidence demonstrating that the S&D Plan is funded with the general assets of DaimlerChrysler and is treated as a payroll practice

exempt from ERISA coverage. Plaintiff has not presented any evidence to raise a question of fact as to whether DaimlerChrysler held out the Plan as an ERISA plan. The Court therefore concludes that the S&A Plan is not an ERISA plan. As a result, Defendants' denial of S&D benefits to Plaintiff and alleged breach of fiduciary duty does not create a cause of action under ERISA and Defendants are entitled to summary judgment with respect to those claims.

**B.      Plaintiff's Request to File a Second Amended Complaint**

After a responsive pleading has been filed– as in this case– "a party may amend the party's pleading only by leave or court or by written consent of the adverse party; and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). The Supreme Court has advised, however, that a motion to amend a complaint should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

Plaintiff's proposed second amended complaint alleges the following claims: (1) action under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3) to recover full benefits ("Count I"); (2) action under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3) to remedy breach of fiduciary duty ("Count II"); (3) equitable estoppel ("Count III"); and (4) tortious interference with business expectancy ("Count IV"). Clearly once the Court has determined that the S&D Plan is not an ERISA plan and has granted summary judgment to Defendants on Plaintiff's ERISA claims, it would be futile for Plaintiff to amend his

complaint to re-allege his ERISA claims. Additionally, the Court finds that it would be futile for Plaintiff to amend his complaint to allege a claim for equitable estoppel. While Plaintiff did not previously assert an equitable estoppel claim, he argued in response to Defendants' motion for summary judgment that Defendants should be equitably estopped from claiming that the Plan is not an ERISA plan since they or DaimlerChrysler represented through the CBA and benefits book that the Plan is subject to the provisions of ERISA. This is the same alleged representation on which Plaintiff premises his proposed equitable estoppel claim. However, as the Court held above, Plaintiffs presents no evidence to show that Defendants or DaimlerChrysler orally or in writing represented the Plan as an ERISA plan.

In his proposed tortious interference claim, Plaintiff alleges that Defendants intentionally and improperly interfered with a business expectancy he held with DaimlerChrysler in 2003. *See* Pl.'s Resp. Ex. 6 ¶¶ 41-46. In his response brief, Plaintiff identifies this business expectancy as his entitlement under Michigan law "to file a claim for insurance benefits 'within 20 days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible.'" *See* Pl.'s Resp. at 9 (quoting MICH. COMP. LAWS ANN. § 500.3412). Defendants reply that Plaintiff's proposed state law claim is preempted by the Labor Management Relations Act ("LMRA"). Defendants are correct as Plaintiff's right to insurance benefits was created by the CBA and a determination as to whether Defendants alleged interference caused or induced DaimlerChrysler to breach the expectancy requires interpretation of the terms of

the CBA. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 218, 105 S. Ct. 1904 (1988)(finding Wisconsin tort claim of bad-faith handling of an insurance claim preempted by the LMRA as the plaintiff's right to insurance had been established by the CBA, is defined by the contractual obligation of good faith, and any attempt to assess liability inevitably involves contract interpretation); *see also Mattis v. Massman*, 355 F.3d 902 (6th Cir. 2004)(finding the plaintiff's claim for tortious interference with a business relationship under Michigan law preempted by LMRA because the plaintiff alleged interference with a business relationship that was created entirely by the CBA). Accordingly, the Court concludes that it would be futile for Plaintiff to amend his complaint to allege a tortious interference with business expectancy claim. For the same reason, the Court rejects Plaintiff's alternative request to dismiss his pending complaint without prejudice so he may file his tortious interference with business expectancy claim in state court.

**IV. Conclusion**

In summary, the Court finds that the S&D Plan is a payroll practice exempt from ERISA coverage. Based on this finding, the Court concludes that Plaintiff's ERISA claims must be dismissed as a matter of law. The Court need not address the arguments in Plaintiff's motion for summary judgment, as the motion is premised on Plaintiff's assertion that the Plan is an ERISA plan. The Court therefore will deny Plaintiff's motion as moot. The Court denies Plaintiff's request to file a second amended complaint or, alternatively, for dismissal without prejudice so he can file a state court action, as the

Court finds that it would be futile for Plaintiff to pursue those claims.

Accordingly,

**IT IS ORDERED**, that Defendants' cross motion for summary judgment is **GRANTED**;

**IT IS FURTHER ORDERED**, that Plaintiff's motion for summary judgment is **DENIED AS MOOT**.

                                                  s/PATRICK J. DUGGAN
                                                  UNITED STATES DISTRICT JUDGE

Copies to:
John J. Cooper, Esq.
Lisa Lane, Esq.